Fannie Bell JONES (Claimant), Appellant,

v.

PURITY TEXTILES CORPORATION (Employer), and Central Surety & Insurance Corporation (Insurer), Respondents.

No. 23020.

Kansas City Court of Appeals.
Missouri.
Nov. 2, 1959.

R. A. Kelpe, Claude L. Schenck, Kansas City, for appellant.

Samuel J. Molby, Vincent E. Rawson, Watson, Ess, Marshall & Enggas, Kansas City, for respondents.

BROADDUS, Judge.

This is a workmen's compensation case and involves an appeal by the claimant, Fannie Bell Jones, from the judgment of the Circuit Court reversing an award of the Industrial Commission. The Commission had awarded the claimant compensation, based upon a permanent partial disability of the body as a whole of 12½% or 50 weeks at a compensation rate of $26.66 per week or $1,333, and $492.15 for medical aid, making a total of $1,825.15.

The evidence shows that claimant was 52 years of age in December of 1956, and weighed 178 pounds. She was in good health prior to December 3, 1956, and had never made a claim for compensation prior thereto. She had been employed by the defendant, Purity Textiles Corporation as a "shaker" and laborer for about seven years. The duties of a "shaker" consist of unpacking soiled towel material from a compressed bale, shaking out this towel material and placing it on a push truck for delivery to the boiler room, where the material is washed. The push truck was about 4 feet high, from 30 to 36 inches wide and about 6 to 8 feet long. It was equipped with 4 small rubber wheels, 3 or 4 inches in diameter. There was one wheel on each end, and one wheel on each side, near the center of the truck. Claimant's version of what took place on the morning of December 3, 1956, is as follows:

"I filled up the truck and it was about nine or ten foot high in this truck and this truck hauls about two hundred fifty or three hundred pounds. I had to pack it in the truck with my hands as far as I could reach and then when I couldn't reach it I threw it up. Some materials fell on the floor. I had a very small place to work. After I had filled up this truck I pulled the truck out of the closed place and put it in the floor. And there was material on the floor but I didn't know it was on the floor. Then I had to push it up a little ramp. (The ramp was 3 or 4 feet long.) The material was on the ramp. Something popped in my side and back as I was pushing when I got on the ramp. My side was hurting and my hand slipped off the truck and

the truck rolled back and struck me in the side.

"Q. You were in the back— A. I was in the back of the truck pushing the truck when my hand slipped off the truck and rolled back on me.

"Q. You say there was some material on the floor or on this incline that you were pushing the truck on? A. Yes.

"Q. Did you stop or slow down the movement of the truck? A. That slowed it down but me all ready hurt and I couldn't get out of the way and trying to catch the truck my hand slipped and the truck rolled back hitting me in the side. I had to go up this ramp pushing it up to the boiler room.

"Q. Mrs. Jones, this material was on the floor, I believe you testified it did slow down the movement of the truck? A. It slowed it down some.

"Q. State whether or not it was necessary for you to push any stronger or harder because of the material? A. This material on the floor made the truck harder to push because it is hard to push a truck or anything going up the ramp.

"Q. State whether or not it was at that time you noticed this popping sensation in your side? A. Yes, it was.

"The Court: Which side was it?

"The Witness: Left, left side.

"Q. (By Mr. Kelpe) Can you describe where at the left side, Mrs. Jones? A. Right there, those two ribs (indicating).

"Q. You are pointing to the lower ribs on the left side? A. I am pointing to the lower ribs on the left side.

"Q. What part of the truck came in contact with you, Mrs. Jones? A. The corner of the truck.

"Q. (By Mr. Kelpe) Can you describe the force with which it struck you?

"The Witness: When I got up this ramp with the truck—you see, the truck was setting like this (indicating) when the truck got up on that material. By sitting on that material, the material was on the floor, the truck started back. Well, it rolled back with a mightily—lots—struck me pretty hard, and this—I couldn't catch it when my hand slipped off it when it hit me."

The Industrial Commission found that the accident happened while "employee was pushing a hand truck loaded with cloth up a ramp. A wheel caught on a piece of cloth lying on the floor. Her hand slipped off the truck and it rolled back striking her in the ribs on the left side of the body," injurying "left 10th, 11th, and 12th ribs anteriorly and the low back area."

In reversing the award of the Commission the Circuit Court found that it "was not supported by the evidence in that it appears from the record in this case that the Employee claimed that while engaged in pushing a hand truck, 'something popped' in her side and back, and as a result of which she was injured; that thereafter, said hand truck rolled back and struck the Employee in the side but that she was already injured; that under the evidence in this case any injury sustained by the Employee may have resulted from either of two circumstances, one of which was not an 'accident' within the meaning of the law and for which, therefore, the Employer and Insurer are not liable under the provisions of the Missouri Workmen's Compensation Act, Section 287.010 et seq. RSMo 1949, V.A.M.S.

"That under the record in this cause, it is impossible to determine that the Employee sustained injury by compensable or noncompensable occurrences."

■ The law is well settled that on review of questions of fact decided by the Industrial Commission, our inquiry, as is that of the Circuit Court, is limited to whether or not the findings of the Commission are supported by substantial evidence

upon the whole record. The reviewing court may not substitute its own judgment on the evidence for that of the administrative tribunal. Blew v. Conner, Mo.App., 310 S.W.2d 294.

■ As we view it the evidence establishes an accident, consisting, perhaps, of two occurrences, happening in immediate sequence and continuity and arising out of the particular work the claimant was doing at the time, namely, trying to move the truck up the ramp. The straining which the claimant underwent in trying to push the truck up the ramp and over the towel material on the floor of the ramp, cannot reasonably or logically be separated from her hand slipping off the truck, and thus releasing the truck, permitting it to roll back and strike her in the side at the same place where she had experienced the popping sensation, which had resulted from the unusual strain, because it was the straining which then and there brought about the slipping of her hand from the truck; all of which was one continuous chain of events, uninterrupted by any intervening cause, terminating in claimant's accidental injuries. The description of the accident as made by the Commission takes into account the entire occurrence from the beginning to the end, or from the time the claimant started to push the truck until it struck her in the left side.

Defendants single out and place great stress on the three words "me already hurt", .as used in claimant's testimony. They contend in their brief that claimant "was already hurt when the hand truck encountered the material." An examination of the claimant's testimony does not show that the popping sensation occurred before the truck wheels came in contact with the material on the floor of the ramp. Although claimant's command of the English langauge is not very good, she has, nevertheless, clearly stated in her testimony that it was *after* the movement of the truck was slowed down by the material on the floor, making the truck harder to push,

that she noticed the popping sensation in her side.

In our opinion, the Commisson was justified in finding that there was but one accident for the reason that it was one continuous occurrence, arising out of the particular work, to wit: moving the loaded truck up the ramp, uninterrupted by any intervening cause. It was but one transaction.

■ Defendants also claim that the claim was barred by failure to give written notice thereof. According to the testimony of the claimant, she notified her foreman on December 5, 1956, that she had hurt herself *on the job*; that the foreman felt the "awful hurt on her left side" and advised her to go to her family doctor because he could not recall the name of the doctor on 39th Street to whom others injured had been sent at times. She again reported to the foreman after she had been examined by Dr. Dixon on December 5, 1956, and once more on December 12, 1956. Willis, the foreman, in his testimony, admitted that claimant told him about her side hurting and being swollen and that quite possibly he told her to go to her own doctor. Under this testimony the Commission was fully justified in finding that the "employer had actual notice of the injury * * * and was not prejudiced by the failure of the employee to give written notice thereof." McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911.

Under this point defendants rely upon the case of Brown v. Douglas Candy Co., Mo. App., 277 S.W.2d 657. In that case the plaintiff claimed that she sustained injury as a result of an accident on December 15, 1952, while at work for the Candy Company. She gave no notice of the accident to anyone connected with the Company until March 23, 1953, and when she entered the hospital on March 25, 1953, she gave no history of the accident. She offered no medical testimony at all connecting her physical condition with the accident of December 15, 1952. In the case at ba1

claimant followed the pattern established by her employer, who, according to its foreman, would send injured employees to the employee's own doctor. In the Brown case no notice of accidental injury was given for a period of over three months, whereas, here, notice of accidental injury was given two days after claimant was injured, thus affording defendants ample opportunity to make their investigation. From the above, it is plain to be seen that the Brown case is not an authority against claimant.

It follows that the judgment of the circuit court should be reversed and the cause remanded to said court with directions to reinstate the award of the Industrial Commission. It is so ordered.

All concur.