**Japolyn Jo WIGHAM, Appellant,**

v.

**BEN FRANKLIN DIVISION OF CITY PRODUCTS CORPORATION and Globe Indemnity Company, Respondents.**

**No. 25342.**

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Formby & Stewart, James S. Formby, and Robert E. Stewart, Kansas City, for appellant.

Harold J. Maddox, Kansas City, for respondents.

SHANGLER, Presiding Judge.

The basic question presented by this appeal is whether the facts found by the Industrial Commission permit the application of that rule of law delineated in its opinion and relied on to find the ultimate issue of accident against the claimant.

Japolyn Jo Wigham was employed by the Ben Franklin Division of City Products Corporation as a stockhelper. She claims to have injured her back while at work on January 15, 1968 and reported such an event to her employer on that day. Her employer accorded her medical and hospital aid at the cost of $920.29 and paid her temporary total disability compensation benefits of $285 for a five week period. Thereafter, all compensation benefits were terminated, although her treating and consulting physicians, to whom she had been referred through the employer, were all of opinion that she required additional treatment and perhaps back surgery. Dr. F. L.

Feierabend, whom claimant had engaged to examine her, concurred in this necessity.

A hearing was conducted to determine and enforce (should it be found) the claimant's right to continued medical treatment and other compensation benefits. The referee entered a temporary or partial award in favor of claimant, having found that she had suffered a compensable accident resulting in injury to her back, the nature and extent of which were not then determinable. He also found that claimant was in need of additional treatment and that the employer had refused to furnish it. Accordingly, he entered a running award whereby the employer was ordered to furnish necessary treatment as well as to pay benefits for temporary total disability to the date of the award. The Industrial Commission reversed the award of the referee and was sustained, on review, by the Circuit Court.

The Industrial Commission's final award denying compensation contained "Findings of Fact and Conclusions of Law" and was premised on them. The first of them recited:

"(1) Employee was not consistent as to the description of the event which she claimed caused her injury."

The last of them concluded:

"There were no witnesses to the occurrence except the employee. She has described the event from which she claims to have sustained injury in more than one way. The Missouri Supreme Court En banc has held that contradictory evidence to prove a fact does not constitute substantial evidence in the absence of an explanation or circumstances to show which of the two versions is true. Welborn v. Southern Equipment Company, 395 S.W.2d 119, l. c. 126."

Interspersed between these two "findings" were eight others, four of which made specific reference to testimony given by claimant at the hearing as to how the accident occurred. The other four referred to statements (contained in claimant's medical and hospital record exhibits or elicited from her witnesses) which she had made to her physician, among others, concerning the onset of her injury. The Industrial Commission ultimately found that "(e)mployee did not sustain an accident or such unusual strain as would constitute an accident". This ultimate finding, avowedly, was based on the application of the rule employed in Welborn v. Southern Equipment Company, supra, as interpreted by the Industrial Commission. The Commission had concluded that, since testimony given by claimant and the statements made by her to others describing the event resulting in her injury were inconsistent, and since there were no other witnesses to the event, her testimony did not constitute substantial evidence from which the Commission could find an accident.

■ Our review extends only to questions of law. Whether a finding is an ultimate fact or conclusion of law depends upon whether it is a product of ratiocination or of the application of fixed rules of law. Maltz v. Jackoway-Katz Cap Co., Mo., 336 Mo. 1000, 82 S.W.2d 909, 913 [7, 9]. Nor are we bound by a legal conclusion of the Industrial Commission drawn from the evidence or the application of the law to the facts. Brotherton v. International Shoe Company, Mo.App., 360 S.W.2d 108, 111 [5, 6]. So considered, the finding that "(e)mployee was not consistent as to the description of the event which she claimed caused her injury" was a conclusion reached by the application of the rule of law followed in *Welborn,* and is thus subject to our review. The cognate and contingent question of law also presented is the legal sufficiency of the evidence to warrant the denial of an award, should it be determined that claimant's testimony was probative as to accident.

Before reviewing the evidence, we examine the Supreme Court *en banc* holding in *Welborn* because the Industrial Commission's ultimate finding of no accident is pinioned to it. The appellate history of

that case commenced by the claimant being denied compensation benefits when the Industrial Commission found that although claimant had suffered an accidental injury, his claim had not been timely filed. The circuit court affirmed these findings. This judgment was appealed to the St. Louis Court of Appeals whose decision is reported as Welborn v. Southern Equipment Company, Mo.App., 386 S.W.2d 432. That court found that the claim had, in fact, been filed within the time allowed by law and reversed the judgment of the circuit court as to that aspect of its judgment and directed that the cause be remanded to the Industrial Commission for further proceedings. On Motion for Rehearing, the employer contended that the decision of the Industrial Commission denying compensation was correct, nonetheless, because the claimant had failed to give proper notice of the injury to the employer. The St. Louis Court of Appeals painstakingly reviewed the record and concluded that, although the claimant had testified randomly to having given notice to the employer, it was not an issue in which the parties had joined, nor one which had been tried by the referee, nor ruled by the Commission or the Circuit Court. The St. Louis Court of Appeals discussed the notice question, arguendo, nonetheless, and ruled against the employer. Having done so, it transferred the case to the Supreme Court en banc on its own motion because of a conflict between its decision on the statute of limitations question with that of the Kansas City Court of Appeals.

The Supreme Court en banc in Welborn v. Southern Equipment Company, 395 S.W. 2d 119, resolved the statute of limitations conflict between the two Courts of Appeals and thereafter discussed the notice question. It suggested that the record disclosed a conflict in the testimony of claimant as to the giving of notice, but expressly refused to rule that issue on the unsatisfactory record before it (1. c. 125). It described that evidence as lacking "the clarity and undisputed quality necessary for an appellate court to rule an issue not passed on by the Commission" (1. c. 126). It was within that context that the court expressed the rule, not new to the law of evidence,[1] that (1. c. 126):

> "Contradictory testimony of a single witness, relied on to prove a fact, does not constitute substantial evidence in the absence of an explanation or other circumstances tending to show which of the two versions is true."

Having acknowledged the rule, the court had no occasion to apply it. It is a dictum of the decision. The Welborn case, therefore, was not intended as, nor on its facts can it be considered, precedent for what constitutes "contradictory testimony" to render operative the rule it pronounces. The Commission's reliance on that decision for anything other than the bare statement of the rule, therefore, is misplaced.

The effect of the application of the rule we have been discussing is to conclude, as a matter of law, that the testimony concerning the fact in issue—in this case, "accident"—was so contradictory as not to be probative of that issue. We believe the evidence afforded no valid basis for its application, and the Industrial Commission erred in doing so, because the claimant's testimony on the material issue of accident was neither inconsistent, nor contradictory, but substantial. Nor can we find any material contradiction on that issue between claimant's testimony and those accounts she gave, from time to time, to her physicians and others ministering to her, to

1. See, also: Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647 [6, 7] ; Foerstel v. St. Louis Public Service Company, Mo. App., 241 S.W.2d 792, 798 [6] ; Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177, 182; Pritt v. Terminal R. R. Ass'n of St. Louis, 359 Mo. 896, 224 S.W.2d 119, 123 [3]; 32A C.J.S. Evidence § 1043.

which the Commission made reference in its findings (2), (3), (4) and (8).[2]

As to claimant's evidence, it consisted of her own testimony, that of her examining physician, Dr. F. L. Feierabend, and that of Ruth Weise, receptionist and custodian of the records for Drs. Vilmer, Williamson, Workman and Littlejohn who had treated claimant on behalf of the employer. Claimant's evidence also included certain exhibits, among them the medical and hospital reports to which the Commission's findings allude.

Japolyn Jo Wigham was the only witness to the event from which she claims injury. On January 15, 1968, she was performing her usual task of replenishing the stock bins at the employer's warehouse. Two kinds of conveyances were usually used in doing this work. One, a six-wheeler, was a large, flat-bedded vehicle, drawn by a long handle, much like a baggage carrier. The other, less massive and smaller, had four wheels and was called a "flat top". Two of its wheels, apparently, were designed to facilitate forward and backward movement, while the other two were intended to ease its lateral movement. The flat top was maneuvered by a handle-bar from which a step was appended. This handle was collapsible so that the step could be used for easier access to the bins.

On that morning, claimant was using a flat top in doing her work. Several six-wheelers were parked nearby. She was in the process of transferring cartons of ball point pens to the flat top from a six-wheeler when she was injured. On direct examination, claimant gave this account of the events that followed:

"Q. All right. And just describe, then, what occurred, in your own words, Mrs. Wigham.

"A. Well, I just moved the little flat top, what we call a flat top, out of my way when it hit the six-wheeler.

\* \* \* \* \* \*

"Q. Would you describe how you were moving the flat top, Mrs. Wigham?

"A. Well, I just started to move to my left. I don't know, was that what you mean? I just started to move it to my left. They don't roll very good because—let's see, I forgot which it is, but either the back or front tires don't roll sideways. They just go straight back and forth. When I moved it, well, of course, it didn't move right and I hit the six-wheeler.

"Q. You were attempting to move it to your side and to your left?

"A. Yes.

"Q. You did say you came in contact with the six-wheeler?

"A. Yes.

"Q. What happened to you on this occurrence?

"A. Well, something went wrong with my back to make me fall on the flat top.

"Q. You fell across the flat top?

"A. Yes.

2. As we have stated, the Welborn rule may be validly applied only where the profered, contradictory proof of a material issue derives from a single witness. In this case, the Industrial Commission found that, not only was claimant's testimony of "accident" inherently inconsistent, but that it was also in conflict with certain accounts of the event she had given, extra-judicially, to various persons, including her physicians. These accounts were embodied in doctors' reports and a hospital record. They came into evidence as part of claimant's case. Under these circumstances, for purposes of this opinion, we shall consider the extra-judicial statements as part of claimant's testimony as to render the *Welborn* rule operative if otherwise applicable.

* * * * * *

"Q. Mrs. Wigham, tell us about the movements of your body when all that occurred.

"A. Well, when I moved, the flat top I did twist and I hit; the six-wheeler made me come to a dead stop.

"Q. All right. What part of your body twisted?

"A. I guess it would be my hips or lower back or down low.

"Q. All right. Do you know above or below your belt line?

"A. Below.

"Q. Is that when you fell across the flat top?

"A. Yes.

"Q. Would you describe how you fell across the flat top?

"A. Well, I just didn't have any legs, just went numb or something. I had no feeling in my legs. It happened to be there and I fell on it. That's all there was to it.

"Q. Would you describe the position in which you fell?

"A. It was on my stomach. It comes to about the middle of your stomach here (indicating). When I fell I was face down on the flat top.

"Q. All right. Now, at that time, Mrs. Wigham, did you feel any pain in your back?

"A. Yes.

"Q. Tell us about that.

"A. Well, it was a real sharp pain in my lower back and, like I said, my legs were numb and * * *."

■ From this testimony, standing alone, we find substantial evidence that claimant suffered an unexpected and abnormal strain, and therefore a compensable accident, within the rule of Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401, as applied in those cases where the abnormal stress was a culmination of suddenly arrested bodily movement. Luketich v. Krey Packing Company, Mo.App., 413 S.W.2d 29; Cain v. Orscheln Bros. Truck Lines, Inc., Mo.App., 450 S.W.2d 474. In recapitulation, claimant was moving the flat top (by hand, it is reasonable to assume), attempted to "scoot it" to her left, out of the way. Because of the peculiar functioning of the flat top's wheels, "it didn't move right" (that is, to the left as she had intended it should), but moved straight ahead and struck a six wheeler. The impact caused her to "come to a dead stop", twisted her lower body—"hips or lower back or down low." Thereupon, she felt "a real sharp pain in (her) back," her legs went numb and she fell across the flat top. Under this set of facts, an accident by abnormal strain is clearly made out when her movement and that of the flat top were suddenly and unexpectedly curtailed, with the resultant objective manifestations of injury. "The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated." Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65. And it is of no consequence that at the time she was injured, claimant was doing her work in a routine manner. "(T)he *unexpected* and *abnormal* strain is the important event. This will *usually* result from doing of the work in an 'abnormal manner' or in doing work that is not routine, but it is not necessarily so." Brotherton v. International Shoe Company, Mo.App., 1. c. 114; Daviess v. Carter Carburetor, Division ACF Industries, Inc., Mo., 429 S.W.2d 738, 746 [4].

The Industrial Commission, however, found this testimony "inconsistent" with claimant's other testimony and extra judicial statements, applied what we have called the "*Welborn* rule", and gave it no probative effect on the issue of accident. The Commission found four sources of testi-

monial conflict and juxtaposed them as its findings (5), (6), (7) and (9):

"(5) At page 58 of the transcript, employee said 'Well, something went wrong with my back to make me fall on the flat top.'

"(6) On the same page of the transcript employee said 'Well, when I moved the flat top I did twist and I hit; the six wheeler made me come to a dead stop.' She said she twisted below the belt line.

"(7) Also on the same page of the transcript employee said, 'Well, I just didn't have any legs, just went numb or something. I had no feeling in my legs. It happened to be there and I fell on it. That's all there was to it.'

   *     *     *     *     *     *

"(9) At page 120 of the transcript employee said, 'Well, I'll tell you what I told the rest of them. I dropped the knife. I picked it up. I grabbed ahold of the little, what we call flat top and it moved it. It hit the six wheeler and when it did I twisted my back. I don't know if I went numb or * * * something popped. I don't know if I heard this or somebody dropped a box, and then is when I fell on the flat top.'"

Of them, findings (5), (6) and (7) relate to testimony given by claimant during direct examination; that in finding (9) was elicited from her during cross-examination. These findings do not specify the contradictions found nor the testimony putatively in conflict, so our discussion will be guided by the content of the findings and our own surmises.

We make out three possible areas of testimonial inconsistency. The first relates to how claimant happened to fall across the flat top, and involves findings (5), (7) and (9). Finding (5) seemingly attributes it to a back injury, finding (7), to numbness in the legs. Both these responses were elicited during a sequence of questioning which had not yet run its course. Before

it was concluded, claimant quite plainly described the symptoms of her injuries as both "a real sharp pain in my lower back" and "like I said, both my legs were numb". However, as finding (9) indicates, claimant also said: "I don't know if I went numb or * * * something popped", but the first portion of that response was never completed. No inference can be reasonably drawn from it as it stands. No inconsistency appears. In so concluding we are mindful of the almost infinite variety of expression available to describe even the simplest event. For this very reason, "it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required." Wigmore on Evidence, (3rd Ed.), Vol. III, p. 725, Whether an inconsistency exists, in turn, is to be determined " 'by the *whole impression or effect* of what has been said or done.' " State ex rel. State Highway Commission of Missouri v. Fenix, Mo.App., 311 S.W.2d 61, 64 [1–3]. We find none.

■ If we surmise correctly, the Industrial Commission found another testimonial inconsistency in the accounts claimant gave in her direct and cross-examinations of the events culminating in the abnormal strain. The version she gave in her direct testimony we have already recounted. The other appears in finding (9). The only essential difference between them is that, on cross-examination, the chain of events begins when she dropped a knife rather than by the movement of the flat top. It is difficult to understand, and no explanation is offered, what contradiction results thereby. The version rendered in finding (9) is more detailed, more concinnous, and therefore more readily understood. It suggests, as the other version does not, the awkwardness of claimant's posture, in at once bending to retrieve the knife and pushing the cart aside with her hands, thereby making herself more vulnerable to physical stress. Claimant's attempt to retrieve the knife and her impulsion of the cart were virtually simultaneous. They

initiated a chain of events which culminated in the sudden stoppage of movement and abnormal strain. Where, as here, events followed in rapid succession, and formed one continuous chain uninterrupted by an intervening cause, and terminated in objective manifestations of injury, they cannot be logically separated. Jones v. Purity Textiles Corp., Mo.App., 328 S.W.2d 714, 717 [2]; Raef v. Stock-Hartis, Inc., Mo.App., 416 S.W.2d 201, 204 [4–7]. The version given on direct examination, although not so particularized, is nonetheless adequate to make out accident by abnormal strain, and that is all that is required.

Assuming arguendo, nonetheless, that somehow it can be said contradictions appear as to the twisting, the dropping of the knife and the falling over the flat top, they would give no occasion for the application of the rule relied on by the Commission to exclude claimant's testimony as non-probative of accident. That is because the application of that rule is confined to contradictory testimony of the witness on an essential or material issue of the case. Sita v. Falstaff Brewing Corporation, Mo.App., 425 S.W.2d 487, 489 [5, 6]. Neither dropping a knife, nor falling bears materially on the issue of accident by abnormal strain. Nor does it make any difference if the twisting occurred before or after the sudden cessation of bodily movement brought about by the collision, because since the Supreme Court decided Crow v. Missouri Implement Tractor Company, 307 S.W.2d 1. c. 405, it has been held that a compensable accident may be the result of unusual or abnormal strain, even though not accompanied or preceded by a slip, fall, or the application of external force.

The other source of reputed inconsistencies found by the Industrial Commission was certain extra-judicial statements made by claimant when relating the history of the occurrence to her physicians and attending paramedical personnel. They comprise the Commission's findings (2), (3), (4) and (8). We need not detail the histories given nor the findings made because the inconsistencies found by the Commission were based, not on what claimant said in each instance, but on what she did not say. Thus, finding (2) detects an inconsistency between claimant's testimony that her body twisted when she was injured and her statement of history to Mrs. Weise, a medical secretary, which neglected to describe her injury as "the twisting type". Presumably, the other inconsistency resulted when claimant testified that the onset of her strain and injury was preceded by a collision between the flat top and six-wheeler, whereas her extra-judicial accounts of history to North Kansas City Memorial Hospital personnel (finding [3]), to Dr. Thomas R. Hunt (finding [4]) and to Dr. F. L. Feierabend (finding [8]) makes no mention of such a collision.

An inconsistency results when a witness *makes* two *assertions of fact,* either by words or conduct, both of which cannot be true at the same time. On the other hand, "(a) *failure to assert a fact,* when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact". Wigmore on Evidence, (3rd Ed.), Vol. III, p. 733; Skipper v. Commonwealth, 195 Va. 870, 80 S.E.2d 401, 404 [1]. We are not informed of the circumstances surrounding claimant's renditions of the several histories to Mrs. Weise, the Hospital personnel, Dr. Hunt and Dr. Feierabend. The record does not even disclose the questions which prompted claimant's answers. Furthermore, it would be reasonable for an injured person submitting herself to the ministrations of medical personnel to view them as healers, not investigators. In that event, unless otherwise indicated to her, she could assume that a detailed account of the event causing the injury would be of no more aid in prescribing treatment than a simpler account. It may not be concluded, therefore, that in giving the history of injury, claimant's failure to assert the facts of twisting and of the collision between the two conveyances amounted to assertions of the non-existence of those facts and thus

inconsistent with her subsequent testimony asserting them.

■ In sum, the Industrial Commission's legal conclusion determining claimant's testimony (including her extra-judicial statements) was inconsistent on the issue of accident, and therefore not probative of it, was erroneous. Our review of the record discloses no such conflict. Not only was there substantial evidence from which the ultimate issue of accident could be found, there was no substantial evidence to the contrary. As we view it, the evidence concerning the accident is not disputed. In such circumstances, had the Commission properly considered, rather than excluded, claimant's testimony on the issue of accident, it could not have arbitrarily disregarded such evidence and substituted its "personal opinion unsupported by sufficient competent evidence" to find that issue against claimant. Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, 297 [8]. "Where (as here) the evidentiary facts are not disputed, the award that should be entered by the Industrial Commission becomes a matter of law and the Commission's conclusions are not binding on the appellate court." Corp v. Joplin Cement Company, Mo., 337 S.W.2d 252, 258 [7,8]. The undisputed evidence requires the conclusion that claimant suffered an accident by abnormal strain which arose out of and in the course of her employment.

■ The Commission denied compensation on the sole ground that "(e)mployee did not sustain an accident or such unusual strain as would constitute an accident". It neither reached nor ruled the other disputed issue of causation of the injury for which claimant seeks compensation. The employer denied the injury in its Answer to Claim for Compensation, asserted lack of causation as a disputed issue before the referee and preserved it for review in its Amended Application for Review. We have no authority to make an initial finding on this disputed issue of fact. Such

power is vested in the Commission. Lawson v. Lawson, Mo.App., 415 S.W.2d 313, 321 [9]; Sec. 287.490, V.A.M.S. Accordingly, although we have found the issue of accident in favor of claimant as a matter of law and so reverse the judgment of the circuit court, we also remand the cause to that court for further remand to the Industrial Commission for proceedings consistent with this opinion.

Having so concluded, we need not consider or determine the additional point raised by claimant.

CROSS and HOWARD, JJ., and SPRINKLE, S. J., concur.

